**ESSEX INTERNATIONAL, INC., Appellant,**

**v.**

**PUBLIC SERVICE COMMISSION of Kentucky and West McCracken County Water District, Appellees.**

Court of Appeals of Kentucky.

May 26, 1972.

Rehearing Denied Oct. 6, 1972.

Lively M. Wilson, Stites & McElwain, Louisville, Lloyd C. Emery, II, Paducah, for appellant.

Dandridge F. Walton, Reed, Scent & Walton, Paducah, Sam G. McNamara, Hazelrigg & Cox, Frankfort, for appellee West McCracken County Water District.

Morris E. Burton, Frankfort, for appellee Public Service Commission of Kentucky.

CULLEN, Commissioner.

Essex International, Inc., being the owner of an industrial plant that is a customer of West McCracken County Water District, appeals from a judgment of the Franklin Circuit Court which affirmed an order of the Kentucky Public Service Commission fixing a *minimum* rate to be paid by Essex for water service. Prior to entry of the order Essex was paying a flat rate of 40 cents per 1,000 gallons, with no minimum. Although its monthly bills when the plant first began operations had run from $1,000 to $1,100 per month, the plant's water consumption dropped off substantially so that the bills had become as low as $57 per month. Under the PSC order here on appeal, the plant is required to pay a *minimum* rate of $1,040 per month, which gives the right to 625,000 gallons of water. The former rate of 40 cents per 1,000 gallons continues to apply to all water used in any month in excess of 625,000 gallons.

The order was based on these findings:

"(1) That Essex is not paying its portion of project costs dedicated for the use and benefit of Essex.

(2) That West McCracken made an investment of approximately $168,833 to serve Essex.

\* \* \* \* \* \*

(4) That the revenues derived by West McCracken from Essex are insufficient to provide an adequate return on the facilities constructed for the use and benefit of Essex \* \* \* "

Essex maintains that the order is discriminatory in that it requires Essex to pay a disproportionate amount of the revenue of the district, in violation of a contract between Essex and the district that any rate increase would be "on a relatively proportionate basis," and in violation of basic principles of public utility law.

The evidence given in hearings before the Public Service Commission warranted a finding of these facts: The water district had completed the preparation of plans for the construction of its system and had initiated steps for financing when Essex announced its intention to build its plant in the territory to be served by the district, and its desire for water service. Upon the basis of estimates by Essex of its water needs, the district revised its plans to provide for more pumping capacity, a larger water storage tank, larger mains, and the construction of a circuit of mains to serve Essex. This substantially increased the cost of the system and, accordingly, increased the amount of money needed to be borrowed to finance the construction. The increased cost attributable to the enlargement of the plant to serve Essex's estimated requirements was $168,833. The construction of the system was financed by loans from a federal agency. By reason of the fact that Essex is taking so much less water than anticipated, the district is unable to meet its debt-amortization requirements. While the system has not yet fully realized its projections as to the number of customers other than Essex, the income from such customers, at existing rates, is expected to be sufficient to amortize the debt on the plant excluding the part attributable to Essex.

The water district is, of course, a municipal, nonprofit corporation. It has no private capital and is not undertaking to earn a profit on an investment. Its aim is to provide water service on what is comparable to a cooperative basis.

In City of Covington v. Public Service Commission, Ky., 313 S.W.2d 391, we recognized that as to *municipally-owned* utilities, the trend of the law is to determine revenue requirements on the basis of actual cash needs, and to allow such a utility with a bonded indebtedness to charge sufficient rates to meet the interest and amortization requirements on the debt. We recognized also that where a municipal-owned utility is financed by *revenue* bonds, the consumers are being compelled to pay for the plant, which is not true where a utility is financed by private capital. But we see no objection to that, in the case of a *nonprofit* municipal corporation, because the consumers are not being asked to pay a *profit* to the corporation on the investment that the consumers have made.

As we interpret the order of the Public Service Commission in the instant case, Essex simply is being required to pay a sufficient rate to amortize the debt on the portion of the utility system attributable to the rendering of service to Essex. By reason of the history of the district, and Essex's size in proportion to other consumers of the district, the apportionment of the plant can be determined with reasonable accuracy. Since Essex is being required to pay only for its portion of the plant, and since it appears that the other consumers will be paying for the rest of the plant, we see no basis for any claim by Essex of discrimination, unless it might be that Essex is being required to amortize the debt on the portion of the plant attributable to Essex at a *faster rate* than required of the other consumers, or that Essex is being charged a disproportionate part of *operating expenses*. There is no claim, however, that such is the case.

We do not think the contract between Essex and the water district, in requiring that any increase in rates be "on a relative-

ly proportionate basis," reasonably can be construed to mean that all rates must be increased in the same *percentage*. The evidence warrants the conclusion that when reasonably anticipated customer expansion is realized, the income from customers other than Essex will be appropriately proportionate from the standpoint of return on the amount of capital invested to serve those customers.

The judgment is affirmed.

All concur.